UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUANE KEVIN MCGILARY,

              Petitioner,

                                Case No. 23-cv-12966

v.                             Honorable Linda V. Parker

MICHAEL BURGESS,

              Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Duane Kevin McGilary, confined at the Saginaw Correctional Facility in Freeland, Michigan, filed a pro se petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Mr. McGilary challenges his convictions under Michigan law for two counts of assault with intent to commit murder, possession of a firearm during the commission of a felony (felony-firearm), first-degree home invasion, carrying a concealed weapon, and restricting, obstructing, or assaulting a police officer. (*Id*.; ECF No. 9-1 at PageID 305.) For the reasons that follow, the Court is denying the petition.

1

# I.  BACKGROUND

On May 14, 2013, a jury convicted Mr. McGilary in the Circuit Court for

Wayne County, Michigan.  (ECF No. 9-1 at PageID 305.)  The Michigan Court of

Appeals affirmed his convictions.  *People v. McGilary*, No. 319975, 2015 WL

1880226 (Mich. Ct. App. Apr. 23, 2015).  The Michigan Court of Appeals relied

on the following facts when denying Mr. McGilary's direct appeal:

> Two police officers responding to gunshots being fired at a coney
> island saw defendant in the area and asked him to "come here."
> Defendant ran away and the police officers pursued him in their
> vehicle.  Eventually defendant stopped and pointed a gun directly at
> the police vehicle and began shooting as he ran toward the vehicle.
> Defendant then ran to a nearby house, climbed over a locked gate, and
> entered the house through the side door.  The owner of the house
> asked defendant to leave and he refused.  During their search for
> defendant, the police found a black handgun by the locked gate that
> defendant had climbed.  Subsequently, the homeowner was able to
> alert the police that defendant was inside his house and defendant was
> arrested.

*Id.* at *1.  These facts are presumed correct on habeas review.  *See* 28 U.S.C.

§ 2254(e)(1); *Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

Petitioner filed an application for leave to appeal to the Michigan Supreme

Court.  *See People v. McGilary*, 872 N.W.2d 455 (Mich. 2015).  The Michigan

Supreme Court granted the application in part and remanded the case for the trial

court to determine whether it would have imposed a materially different sentence

under the sentencing procedure described in *People v. Lockridge*, 870 N.W.2d 502,

524 (Mich. 2015).  *See McGilary*, 872 N.W.2d at 456.  The Court denied leave to appeal with respect to Mr. McGilary's remaining claims.  *Id*.

On remand, the trial court concluded that Mr. McGilary's sentence would not have been materially different if the sentencing guidelines had been advisory at the time of his original sentencing.  (ECF No. 9-16 at PageID 813.)  The Michigan Court of Appeals affirmed the trial court's decision.  *People v. McGilary*, No. 349550, 2020 WL 6231639, at *2 (Mich. Ct. App. Oct. 22, 2020).  Mr. McGilary did not file an application for leave to appeal to the Michigan Supreme Court.

However, he did file a post-conviction motion for relief from judgment with the trial court pursuant to Michigan Court Rule ("MCR") 6.500, *et. seq.*, which the court denied.  *People v. McGilary*, No. 12-001815-01-FC (Wayne Cnty. Cir. Ct. Nov. 8, 2022); (ECF No. 9-19).  Mr. McGilary sought leave to appeal this decision, but the Michigan appellate courts denied relief under MCR 6.508(D). *See People v. McGilary*, No. 365097 (Mich. Ct. App. July 7, 2023), *leave denied*, 996 N.W.2d 445 (2023).

Mr. McGilary now seeks a writ of habeas corpus on the following grounds:

I.  Mr. McGilary's constitutional right to effective assistance of counsel was violated when the trial court failed in its duty to inquire into the reason for Petitioner's dissatisfaction with trial counsel, and the state court unreasonably erred when it failed to recognize this constitutional violation.

II.  Mr. McGilary's constitutional right's [sic] were violated when extensive testimony concerning unrelated and unsubstantiated

3

criminal conduct on the part of Petitioner, which was irrelevant, inflammatory, and highly prejudicial, denied Petitioner a fair trial; the cautionary instruction did not cure the prejudice and the motion for mistrial should have been granted; counsel's failure to object to additional prejudicial testimony constituted ineffective assistance of counsel.  The state court unreasonably erred when it failed to recognize this constitutional violation.

III.  Mr. McGilary's constitutional right to a fair trial was denied when the trial court improperly injected itself into the case, took on the role of the prosecutor, and pierced the veil of judicial impartiality.  The state court unreasonably erred when it failed to recognize this constitutional violation.

IV.  Mr. McGilary's Sixth and Fourteenth Amendment rights were violated by judicial fact finding which increased the floor of the permissible sentence . . . [i]n violation of *Alleyne v. United States*, 133 S Ct 2151 (2013).  The state court unreasonably erred when it failed to recognize this constitutional violation.

V.  Mr. McGilary's constitutional right to effective assistance of counsel was violated when trial counsel failed to request fingerprints, gunshot residue, and ballistics testing, or to request funds for independent forensic testing.  The state court unreasonably erred when it failed to recognize this constitutional violation.

VI.  Mr. McGilary was denied due process of law where there is insufficient evidence to support his conviction of first-degree home invasion.  The state court unreasonably erred when it failed to recognize this constitutional violation.

VII.  Mr. McGilary was denied due process of law where the prosecutor's mischaracterization of the evidence (B & E), which gives a false impression is false evidence and failed to correct false testimony by Diana Wiggins on a material issue; in the alternative, counsel was ineffective when he failed to contemporaneously object

4

to her testimony.  The state court unreasonably erred when it failed to recognize this constitutional violation.

VIII.  Mr. McGilary was denied his state and federal constitutional right to the effective assistance of counsel at trial, where defense counsel failed to: A) secure the presence of Kelly Shannon critical defense alibi witness; B) failed to request on the record a continuance to locate and produce Ms. Shannon.  The state court unreasonably erred when it failed to recognize this constitutional violation.

IX.  Petitioner is entitled to a new trial because his trial counsel was ineffective in failing to question the prosecution's star witness "Diana Wiggins" about her false testimony about Petitioner breaking into her daughter's house and shots fired at the Coney Island.  The state court unreasonably erred when it failed to recognize this constitutional violation.

X.  Petitioner is also entitled to relief from judgment under the actual innocence standard defined by the U.S. Supreme Court in *Murray v. Carrier*.  The state court unreasonably erred when it failed to recognize this constitutional violation.

XI.  Petitioner was denied the effective assistance of counsel guaranteed by the federal Constitution where his appellate counsel neglected strong and critical issues which must be seen as significant and obvious.  The state court unreasonably erred when it failed to recognize this constitutional violation.

(*See generally* ECF No. 1.)

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

imposes the following standard of review for habeas cases:

5

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v.*

6

*Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 103.

## III.  DISCUSSION

### A.    Substitution of Counsel (Claim 1)

Mr. McGilary first claims that he was deprived of his right to the assistance of counsel when the trial court denied his request for substitute counsel on the first day of trial.  (ECF No. 1 at PageID 14.)  He also argues that the judge's inquiry into his complaints about his trial counsel were inadequate.  (*Id*.)

On May 9, 2013, the first day of trial, Mr. McGilary objected to continued representation by his appointed counsel, who he indicated only visited him once in jail.  (ECF No. 9-12 at PageID 440.)  Mr. McGilary further stated that his "attorneys" had not brought him any paperwork.  (*Id*. at PageID 438.)  He even suggested that he did not know what the charges against him were, to which the judge informed him of the charges and the possible penalties.  (*See id*. at PageID 438-39.)

Mr. McGilary acknowledged that he understood what he was charged with, but indicated he wanted a different attorney because there had been no

communication between them.  (*Id*.)  Counsel acknowledged that he only visited

Mr. McGilary once, which was when he was first appointed to replace Mr.

McGilary's first attorney.  (*Id*. at PageID 440.)  Counsel stated that he knew the

facts of the case and recited them in detail.  (*Id*. at PageID 440-42.)  Counsel

further informed the judge that Mr. McGilary fired his prior retained attorney and

entered and withdrew a guilty plea.  (*Id*. at PageID 442.)  Without commenting on

Mr. McGilary's objection, the judge said, "Bring in the jury.  Let's go."  (*Id*.)

> The Michigan Court of Appeals rejected this claim, reasoning:
>
> Before trial began in this case, defendant indicated that he wanted "to address that I'm going through this thing without my paperwork." The trial court responded by summarizing defendant's charges and potential sentences and defendant indicated that he understood them. But defendant stated that he did not want to proceed with his appointed counsel because of a lack of communication; counsel had only been to see him one time.  Defense counsel confirmed that he had been to see defendant one time, probably the day after he was appointed.  And then counsel proceeded to describe the facts of the case, indicated that he knew "this case frontward and backwards," and had discussed the case at length with defendant, who knew "what's going on."  Defendant did not respond to, deny or dispute his counsel's assertions, and the trial began.  Now, on appeal, defendant claims that the trial court should have further considered defendant's complaint about his counsel.  But from the record, that complaint appeared resolved to defendant's satisfaction.  Further, defendant has failed to establish that good cause existed to support the appointment of substitute counsel. That is, defendant does not claim that a legitimate difference of opinion developed with regard to a fundamental trial tactic or his defense.  Accordingly, this issue is without merit.

*McGilary*, 2015 WL 1880226, at *1.

8

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant representation by a particular attorney. *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989)). When deciding a motion for substitution of counsel, the reviewing court should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012). "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id.* at 663-64.

Although all the federal circuit courts agree that a court "cannot properly resolve substitution motions without probing why a defendant wants a new lawyer," Supreme Court precedent does not require, as a matter of federal constitutional law, that a trial court engage in an inquiry with a criminal defendant concerning the nature of his complaints against counsel before denying a motion for substitution. *Id.* at 664. Indeed, the Supreme Court in *Martel* held that a federal district court did not abuse its discretion in denying a habeas petitioner's motion for substitution of counsel without first conducting an inquiry into the

9

nature of his complaints where the motion was untimely, and the court was ready to render a decision in that case. *Id*. at 664-66.

In short, there is no clearly established federal law requiring the trial judge's inquiry into the nature of a defendant's dissatisfaction with his or her attorney prior to denying a motion for substitution of counsel. *See James v. Brigano*, 470 F. 3d 636, 643 (6th Cir. 2006) (reversing a grant of habeas relief because the inquiry requirement was not clearly established federal law); *see also Akins v. Easterling*, 648 F.3d 380, 397 (6th Cir. 2011). In the habeas corpus context, this means that, in the absence of a showing that a petitioner received ineffective assistance of counsel at trial, a state trial judge's failure to inquire into a petitioner's complaints against counsel before denying a motion for substitution of counsel does not entitle the petitioner to habeas relief. *See Peterson v. Smith,* 510 F. App'x 356, 366-67 (6th Cir. 2013) (holding that the petitioner was not entitled to habeas relief based on the trial court's failure to inquire into his dissatisfaction with his counsel because he failed to show that counsel was ineffective). Therefore, the trial court's alleged failure to engage in a more thorough inquiry into Mr. McGilary's complaints before denying his motion for substitute counsel, in itself, does not entitle him to habeas relief.

Additionally, the Court notes that Mr. McGilary's request for substitute counsel was untimely because it was made on the first day of trial. *See United*

10

*States v. Griffin*, 476 F. App'x 592, 596 (6th Cir. 2011). The Sixth Circuit has noted that when "the granting of the defendant's request [for a continuance to obtain new counsel] would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008) (quoting *United States v. Pierce*, 60 F.3d 886, 891 (1st Cir.1995)). The Sixth Circuit has rejected similar requests for the replacement of counsel as being untimely. *See United States v. Trujillo*, 376 F.3d 593, 606-07 (6th Cir. 2004) (holding that the defendant's motion for substitution of counsel was untimely when it was raised only three days prior to the start of the trial); *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996) (holding that the motion to obtain new counsel was untimely when it was made the day before trial).

Second, this Court notes that Mr. McGilary previously discharged his first attorney, which already caused delays in the case. Permitting him to discharge his second attorney to appoint a third one would have caused further delays. Thus, the trial court did not err in denying Mr. McGilary's request to discharge his second attorney. *See, e.g.*, *United States v. Ammons*, 419 F. App'x 550, 552 (6th Cir. 2011) (holding that the district court's denial of the defendant's motion for third counsel did not violate his Sixth Amendment right to counsel, despite defendant's claim of lack of communication, where the court initially appointed an attorney to

11

represent the defendant, but the defendant retained private counsel six months later, the court pushed back the trial date several times to accommodate that attorney, there was no indication of the defendant's displeasure with counsel until the denial of the motion to suppress he filed on the defendant's behalf, there was no indication that disagreement was total or irreconcilable, and another change of counsel would have set the trial date back six more months).

Third, Mr. McGilary failed to establish good cause for his request to substitute counsel. Mr. McGilary did not show that there was a conflict so great that it resulted in a total lack of communication that prevented an adequate defense. *See Jennings*, 83 F.3d at 149. Furthermore, he did not make a showing that defense counsel's failure to visit him in jail led to a breakdown in communication that ultimately deprived him of an adequate defense. *See United States v. Jackson*, 628 F. App'x 384, 387 (6th Cir. 2015) (holding that the district court did not err in failing to appoint new counsel, even though the defendant's attorney visited him only once in jail, where the defendant failed to show that the failure to visit more often did not lead to a breakdown in communications between counsel and the defendant). Mr. McGilary's related complaint about not having sufficient time to discuss all his issues in detail with his counsel does not show that there was a serious conflict or inability to communicate that would justify the substitution of counsel. *See United States v. Justice*, 14 F. App'x 426, 430-31 (6th

Cir. 2001). The record does not demonstrate that the disagreements between Mr. McGilary and his attorney reached the level of a conflict sufficient to justify the substitution of counsel. *See United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005).

Finally, Mr. McGilary is unable to show that the trial court's denial of his motion for substitution caused him prejudice. *See United States v. Vasquez*, 560 F.3d 461, 468 (6th Cir. 2009). "The strained relationship between [Mr. McGilary and his attorney] was not a 'complete breakdown in communication' that prevented [Mr. McGilary] from receiving an adequate defense." *Id.* As the Court notes in rejecting Mr. McGilary's ineffective assistance of trial counsel claims, *infra*, Mr. McGilary fails to show he was denied the effective assistance of trial counsel.

Therefore, Mr. McGilary is not entitled to relief on his first claim.

## B.   Evidentiary Error (Claim 2)

In his second claim, Mr. McGilary argues that the trial court erred in admitting certain testimony that should have been excluded under the Michigan and Federal Rules of Evidence 403 and 404(b) as being more prejudicial than probative and as other-acts evidence. (ECF No. 1 at PageID 20-21.) According to Mr. McGilary, the trial court should have granted him a mistrial on that basis, and

13

his counsel's silence as to this issue constitutes ineffective assistance.  (*Id.* at PageID 18-19.)

Mr. McGilary identifies two instances where allegedly inflammatory and prejudicial testimony was admitted.  According to Mr. McGilary, the first instance occurred when Ms. Wiggins, the mother of his ex-girlfriend, testified that she called the police to report that Mr. McGilary broke into her daughter's home on the day of the shooting.  (*Id.* at PageID 20-21.)  The second instance occurred when Officer Greywyn Russell testified that Mr. McGilary was confronted by the police because Ms. Wiggins informed the police that Mr. McGilary was wanted for attempted murder and breaking and entering.  (*Id.* at PageID 19.)

The Supreme Court makes clear that it is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  In federal habeas review, a federal court is limited to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States.  *Id.*  Thus, errors in the application of state law, especially rulings on the admissibility of evidence, are usually not questioned by a federal habeas court.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

Accordingly, Mr. McGilary's claim that evidence was improperly admitted in violation of the applicable rules of evidence cannot form the basis for habeas relief, as it involves a state law evidentiary issue.

Similarly, Mr. McGilary's related claim that the state court violated Michigan Rule of Evidence 404(b) or any other provision of state law by admitting improper character evidence or evidence of prior bad acts is non-cognizable on habeas review.  *See Bey v. Bagley*, 500 F. 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 ("Nor do our habeas powers allow us to reverse [a state court] conviction based on a belief that the trial judge incorrectly interpreted the [state's evidentiary rules] in ruling that the prior injury evidence was admissible as bad acts evidence. . . ."); *Dowling v. United States*, 493 U.S. 342, 352-53 (1990) (holding that there was no due process violation where the lower court admitted into evidence testimony related to the defendant's "similar acts" to show that the defendant was involved in a subsequent house burglary for which he had been acquitted).  The admission of "prior bad acts" or "other acts" evidence against Mr. McGilary at his state trial does not entitle him to habeas relief because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Bass v. Burt*, 850 F. App'x 962, 965 (6th Cir. 2021).

Weighing further against Mr. McGilary's argument that the trial court should have granted a mistrial is the fact that the court ordered Ms. Wiggins' testimony stricken in its entirety after finding the testimony irrelevant.  (*See* ECF No. 8 at PageID 284.)  The Michigan Court of Appeals concluded that the trial court did not err in denying Mr. McGilary's request for a mistrial regarding Ms. Wiggins' testimony in light of the fact that it was stricken, and an appropriate curative instruction was given.  *See McGilary*, 2015 WL 1880226, at *2.  The appellate court explained:

> Defendant contends that the admission of testimony from his ex-girlfriend's mother, which included that she had called the police to report that defendant had broken into her daughter's home on the day of this incident, denied him a fair trial.  However, the trial court instructed the jury to disregard the entirety of the challenged testimony.  . . .  And the trial court twice reiterated its instruction to the jury that it could not consider any evidence excluded during the course of the trial.  The trial court did not abuse its discretion in denying defendant's motion for a mistrial.

*Id*. (internal citation omitted).

Notably, a trial court has the discretion to grant or deny a motion for mistrial without a showing of manifest necessity.  *Walls v. Konteh*, 490 F.3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F.3d 352, 354-55 (6th Cir. 1994).  Additionally, the trial court immediately instructed the jury to disregard Ms. Wiggins' testimony, which makes the statements about Mr. McGilary breaking into her daughter's home less prejudicial as to require a mistrial.  *See United States*

*v. Beamus*, 110 F. App'x 513, 517 (6th Cir. 2004) (holding the testimony that the defendant was "on the run" from probation was not per se prejudicial to warrant a mistrial where the court immediately told the jury to disregard that single, isolated remark); *United States v. Harris*, 165 F.3d 1062, 1066 (6th Cir. 1999) (holding that the police officer's allusion to the defendant's prior arrest did not require a new trial because it was isolated and the lower court gave an immediate curative instruction); *United States v. Forrest*, 17 F.3d 916, 920-21 (6th Cir. 1994) (holding that the district court judge did not abuse its discretion in denying the defendant's motion for a mistrial when the judge offered a clear admonition of the agent's statement regarding the defendant's criminal history).  Not only did the trial court immediately tell the jury to disregard Ms. Wiggins' testimony, but, during final instructions, the court also advised the jury not to consider any information not admitted into evidence.  (ECF No. 8 at PageID 285.)  This Court presumes that the jury followed the trial court's instructions.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Thus, the trial court's instructions cured any potential error from Ms. Wiggins' testimony.

With respect to Officer Russell's testimony, the Michigan Court of Appeals held that Mr. McGilary waived appellate review of his claim because "defense counsel elicited this testimony on cross-examination, failed to contemporaneously

object to her testimony, and then . . . referred to the allegation that defendant was allegedly 'wanted' for those offenses." *McGilary*, 2015 WL 1880226, at *2.

It is established law that waiver is an "intentional relinquishment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A criminal defendant who has waived his or her rights "may not then seek appellate review of claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733-34); s*ee also Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012) ("[W]aiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors."). "When one knowingly waives his charged error, that challenge is forever foreclosed, and cannot be resurrected on appeal," *Morgan v. Lafler*, 452 F. App'x 637, 646 n.3 (6th Cir. 2011) (citing *United States v. Saucedo*, 226 F.3d 782, 787 (6th Cir. 2000)), and a defendant in a criminal case cannot complain of error which he or she has invited, *see Shields v. United States*, 273 U.S. 583, 586 (1927). In effect, "[w]hen a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error." *See Fields v. Bagley,* 275 F.3d 478, 486 (6th Cir. 2001).

Accordingly, Mr. McGilary is not entitled to relief on this portion of his second claim.[1]

### C.   Sentencing Violation (Claim 4)

Mr. McGilary contends in his fourth claim that the trial court erred by "finding facts beyond those established by [his] guilty verdict." (ECF No. 1 at PageID 35.)  According to Mr. McGilary, his Sixth and Fourteenth Amendment rights were violated when the judge "engaged in judicial fact-finding that increased the floor of the range of permissible sentence," in violation of *Alleyne v. United States*, 570 U.S. 99 (2013).  (*Id.* at PageID 34.)

In *Alleyne*, the Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt.  *See Alleyne*, 570 U.S. at 103.  Relying on *Alleyne*, the Michigan Supreme Court held that Michigan's mandatory sentencing guidelines scheme violates the Sixth Amendment right to a jury trial. *See generally Lockridge*, 870 N.W.2d at 506.  The Michigan Supreme Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines entirely advisory.  *Id.* at 391-92.  In addition, the *Lockridge* Court held that the appropriate

---

[1] The Court addresses below Mr. McGilary's claim that counsel performed ineffectively by eliciting this testimony.

remedy is a remand for the trial court to determine if it would impose the same sentence under advisory guidelines. *Id.* at 524-25; *see also United States v. Crosby*, 397 F.3d 103, 117-118 (2nd Cir. 2005).

In Mr. McGilary's case, the Michigan Supreme Court determined that the case should be remanded for the trial court to decide whether a different sentence was warranted in light of the advisory nature of the guidelines. *McGilary*, 872 N.W.2d at 456. On remand, the trial court concluded that the same sentence was warranted. (ECF No. 9-16 at PageID 813.)

Thus, Mr. McGilary is not entitled to relief on his fourth claim. *See Dickens v. Chapman*, No. 19-1945, 2020 WL 832900, at *3 (6th Cir. Jan. 15, 2020).

### D.    Ineffective Assistance of Trial Counsel (Claims 2 and 5)

Mr. McGilary alleges, as part of his second and fifth claims, that he was denied effective assistance of trial counsel. (ECF No. 1 at PageID 25, 38.)

To prevail on his ineffective assistance of counsel claims, Mr. McGilary must show that the state court's conclusion regarding these claims "was contrary to, or involved an unreasonable application of," *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 114, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel, in which the petitioner must show that (1) counsel's performance was

20

deficient and (2) the deficient performance prejudiced the defense.  *Strickland*, 466

U.S. at 687.

In his second claim, Mr. McGilary argues that his trial counsel was

ineffective because counsel opened the door to Officer Russell's testimony

regarding Ms. Wiggins' allegation that Mr. McGilary was wanted for attempted

murder and breaking and entering.  (ECF No. 1 at PageID 25.)  Mr. McGilary

argues that counsel should have also objected to the testimony.  (*Id*.)

The Michigan Court of Appeals rejected the claim, reasoning:

> Defendant argues that his counsel invited the police officer's
> inflammatory testimony regarding his ex-girlfriend's mother's claims
> that he was wanted for attempted murder and breaking and entering,
> and then failed to object to that testimony.  However, it is clear from
> defense counsel's questioning of the officer that counsel was
> attempting to show that the officer had relied on false and unreliable
> information in the pursuit of defendant as a suspect during her
> investigation.  That is, the information regarding a shooting at the
> coney island turned out to be false, as were these claims by
> defendant's ex-girlfriend's mother.  In closing argument, counsel
> again attempted to demonstrate that the police had no reason to
> investigate defendant and had relied on false information, stating:
>
> They decide to investigate.  Investigate what?  The guy hasn't done
> anything and someone already had lied upon him one time before by
> suggesting shots were fired either inside or outside the Coney Island.
> The officers indicated we had no probable cause to stop the person.

*McGilary*, 2015 WL 1880226, at *5.

As an initial matter, counsel was not ineffective in his cross-examination of

Officer Russell because her answer was non-responsive to his question.  Officer

Russell testified on cross-examination that she and her partner "were told he was wanted for attempted murder, and he was wanted for breaking into her house." (ECF No. 9-12 at PageID 588.)  Defense counsel, however, did not intend to elicit this testimony from Officer Russell because the question he asked was, "What does ["to investigate"] mean?"  (*Id*.)

Furthermore, counsel was not ineffective in eliciting the testimony from Officer Russell because counsel asked a legitimate question as part of a strategy challenging the officers' rationale for confronting Mr. McGilary.  *See Hodge v. Haeberlin*, 579 F.3d 627, 641 (6th Cir. 2009).  It is also likely that counsel made a strategic decision not to object to Officer Russell's testimony to avoid bringing undue attention to it.  *See Cobb v. Perini*, 832 F.2d 342, 347-48 (6th Cir. 1987). Consequently, Mr. McGilary is not entitled to habeas relief on his second claim regarding effective assistance of counsel.

Mr. McGilary argues as part of his fifth claim that defense counsel was ineffective for failing to ask the police to perform gunpowder residue, fingerprint, and ballistics testing or, in the alternative, request funds to secure independent testing.  (ECF No. 1 at PageID 38.)

The Michigan Court of Appeals rejected the claim, reasoning:

> Considering the eyewitness and circumstantial evidence in this case, it is likely that defense counsel decided to use the lack of testing to defendant's advantage by systematically cross-examining the officers about the lack of testing and reiterating the lack of testing during his

closing argument. Counsel clearly used the lack of testing to show
that the police failed to adequately investigate this case, unfairly
focused their investigation on defendant, and then improperly arrested
defendant because he was not the perpetrator.

*McGilary*, 2015 WL 1880226, at *6.

"Where trial counsel has dealt with a problem by choosing one option over

another," a reviewing court does "not second-guess that strategy." *Searcy v.*

*Berghuis*, 549 F. App'x 357, 362 (6th Cir. 2013). Counsel's decision to use the

lack of testing to attack the weaknesses in the prosecution's case—rather than seek

independent testing of the evidence—is a valid trial strategy that defeats Mr.

McGilary's ineffective assistance of counsel claim. *See Chambers v. Sec'y Penn.*

*Dep't of Corr.*, 442 F. App'x 650, 654 (3d Cir. 2011); *King v. McDaniel*, 357 F.

App'x 856, 859 (9th Cir. 2009); *Baker v. Yates*, 339 F. App'x 690, 691 (9th Cir.

2009). In addition, whatever counsel may have obtained by asking the police to

conduct this testing "was and remains speculative (and thus, the claim fails under

*Strickland*) and may well have inculpated [Mr. McGilary], in which case there was

an affirmative, strategic reason not to seek it." *Chambers*, 442 F. App'x at 654.

Accordingly, Mr. McGilary is not entitled to relief on his fifth claim.

### E. Sufficiency of the Evidence (Claim No. 6)

In his sixth claim, Mr. McGilary contends that there was insufficient

evidence to convict him of first-degree home invasion because there was no

evidence that he committed a felony when he broke into the house.  (ECF No. 1 at PageID 42.)

There is no doubt that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A court need not

> ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted).  There is an added level of deference on federal habeas review.

"A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim." *Cavazos v. Smith,* 565 U.S. 1, 2 (2011). The Supreme Court instructs federal habeas courts to grant relief only if the state court's decision was an objectively unreasonable application of the *Jackson* standard.  *See id.*  Even if the federal court disagrees with a conviction, the court

must uphold the conviction.  *Id.*  Indeed, for a federal habeas court reviewing a

state court conviction, "the only question under *Jackson* is whether that finding

was so insupportable as to fall below the threshold of bare rationality." *Coleman v.*

*Johnson*, 566 U.S. 650, 656 (2012).  A state court's determination that the

evidence does not fall below that threshold is entitled to "considerable deference

under [the] AEDPA." *Id*.

> Burglary of a dwelling is defined under Michigan law as:
>
> A person who breaks and enters a dwelling with intent to commit a
> felony or a larceny in the dwelling or a person who enters a dwelling
> without permission with intent to commit a felony or a larceny in the
> dwelling is guilty of home invasion in the first degree if at any time
> while the person is entering, present in, or exiting the dwelling either
> of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

Mich. Comp. Laws § 750.110(a)(2).  Michigan's first-degree home invasion statute

includes these elements, along with proof that the defendant was armed with a

dangerous weapon and/or that the dwelling was occupied.  *See Johnson v. Warren*,

344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004) (citing *United States v. Garcia-*

*Serrano*, 107 F. App'x 495, 496-97 (6th Cir. 2004)).

The Michigan Court of Appeals rejected Mr. McGilary's sufficiency-of-the-

evidence claim, finding that the felony underlying the first-degree home invasion

charge was assaulting, resisting and/or obstructing a police officer.  *McGilary*,

2015 WL 1880226, at *6.  Under Michigan Compiled Laws § 750.81d(1), the elements of assaulting, resisting, or obstructing a police officer are: (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties.  *Id.* (citing *People v. Corr*, 788 N.W. 2d 860, 863 (Mich. 2010)).  The state court explained that the "definition of 'obstruct' includes 'a knowing failure to comply with a lawful command.'"  *Id.* (quoting Mich. Comp. Laws § 750.81d(7)(a)).

The Michigan Court of Appeals found sufficient evidence that Mr. McGilary committed the felony of resisting and obstructing a police officer when he broke into the house, supporting his first-degree home invasion conviction.  *Id.*  The state court reasoned:

> Here, when defendant was being pursued by police in their vehicle, he fired several gunshots at their vehicle and then continued to run.  He ran to a nearby house, climbed over a locked gate, and entered the house without permission.  Defendant told the homeowner that he was running from the police and he refused to leave the house.  This evidence was sufficient to establish first-degree home invasion.

*Id.* (citations omitted).

The Michigan Court of Appeals reasonably rejected Mr. McGilary's sufficiency of evidence claim.  Therefore, Mr. McGilary is not entitled to habeas relief on this issue.

26

F.      **Application of the actual-innocence standard (Claim 10)**

McGilary argues in his tenth claim that he is entitled to habeas relief because he "has made the stringent showing required by the actual-innocence exception." (ECF No. 1 at PageID 70.)

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence do not state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. "Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.*; s*ee also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases).

In light of this precedent, Mr. McGilary is not entitled to relief on his tenth claim. *See Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007).

## Procedural Default (Claims Nos. 3, 7, 8, and 9)

In his third claim, Mr. McGilary argues that the trial judge committed judicial misconduct. Specifically, Mr. McGilary asserts that the court improperly

injected itself into the case and exceeded its scope of authority by questioning the witnesses and "lecturing" the jury, which ultimately prejudiced him.  (ECF No. 1 at PageID 28, 32-33.)  Respondent maintains that this claim is "inexcusably procedurally defaulted" because the Michigan Court of Appeals found that Mr. McGilary did not demonstrate plain error and denied him relief, which constituted procedural default.  (ECF No. 8 at PageID 241-42.)

When a state court clearly and expressly relies on a valid state procedural bar, federal habeas review is also "barred unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  If the petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue.  *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018) (explaining that "where a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue.").

However, in the extraordinary case where a constitutional error has probably resulted in the conviction of someone who is actually innocent, a federal court may consider the constitutional claims presented even when there is not a showing of

cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new and reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Bousley v. United States*, 523 U.S. 614, 623 (1998) ("[A]ctual innocence means factual innocence, not mere legal insufficiency.").

Michigan law requires defendants in criminal cases to present their claims in the trial courts to preserve them for appellate review. *See People v. Carines*, 597 N.W.2d 130, 137-39 (Mich. 1999). Panels of the Michigan Court of Appeals have split on whether this preservation requirement applies to judicial bias or misconduct claims. Most panels have held that it does. *See, e.g., People v. Cain*, 829 N.W.2d 37, 44 (Mich. Ct. App. 2012)*, aff'd in part and vacated in part on other grounds*, 838 N.W.2d 150 (Mich. 2013); *People v. Jackson*, 808 N.W.2d 541, 552 (Mich. Ct. App. 2011); *People v. Ackerman*, 669 N.W.2d 818, 831 (Mich. Ct. App. 2003); *People v. Sardy*, 549 N.W.2d 23, 27 (Mich. Ct. App. 1996); *People v. Burgess*, 396 N.W.2d 814, 818 (Mich. Ct. App. 1986).

Other panels suggest that a petitioner does not have to object to judicial misconduct at trial to preserve the claim for appellate review, particularly if the objection would have been made to the trial judge concerning the judge's own conduct. *See People v. Pierson*, 909 N.W.2d 274, 276 (Mich. Ct. App. 2017),

*People v. Jones*, 445 N.W.2d 518, 520 (Mich. Ct. App. 1989); *People v. Collier*, 425 N.W.2d 118 (Mich. Ct. App. 1988).  However, *Collier* and *Jones* were decided prior to the Michigan Supreme Court's decision in *Carines*.  Another judge in this district has found that, even though the Michigan Court of Appeals inconsistently applied procedural default rules in cases raising constitutional issues, *Carines* ended this practice and established a forfeiture rule that applies equally to constitutional and non-constitutional claims.  *See Hunter v. Bergh*, No. 13-CV-15212, 2015 WL 5139358, at *3 (E.D. Mich. Sept. 1, 2015) (citing *Tillman v. Bergh*, No. 06-CV-11555, 2008 WL 6843654 (E.D. Mich. July 2, 2008)).  Further, in *Pierson*, the Michigan Court of Appeals only mentioned in passing that it might be unnecessary to object to judicial misconduct to preserve the claim for appellate review but noted that defense counsel did object.  *Pierson*, 909 N.W.2d at 276.

Despite this divergence, most Michigan courts—before and after *Carines*—have required an objection to preserve a judicial misconduct claim for appellate review.  Likewise, the Sixth Circuit has affirmed at least one decision to procedurally default a judicial misconduct claim brought by a habeas petitioner challenging his Michigan conviction where the petitioner failed to preserve the claim by objecting at the trial court level.  *See Dothard v. Palmer*, No. 16-2288, 2017 WL 3046327, at *3 (6th Cir. Feb. 13, 2017).

By failing to object at trial to the alleged judicial bias, Mr. McGilary failed

to preserve the claim and, as a result, the Michigan Court of Appeals reviewed the

claim only for plain error. (ECF No. 8 at PageID 242.) The court did not find

plain error and rejected the claim. (*Id*.) Mr. McGilary has not offered any reasons

for failing to preserve his judicial misconduct claim at the trial level. He also has

not offered any reasons, such as ineffective assistance of trial counsel, for the

Court to excuse the procedural default. By not raising any claim or issue to excuse

the default, Mr. McGilary "has forfeited the question of cause and prejudice."

*Rogers v. Skipper*, 821 F. App'x 500, 503 (6th Cir. 2020).

Moreover, the fact that the Michigan Court of Appeals engaged in plain

error review of the judicial misconduct claim is not a waiver of the state procedural

default. *See Seymour*, 224 F.3d at 557. Instead, this Court views the Michigan

Court of Appeals' review of Mr. McGilary's judicial misconduct claim for plain

error as enforcement of the procedural default. *See Hinkle v. Randle,* 271 F. 3d

239, 244 (6th Cir. 2001).

Therefore, the Court concludes that Mr. McGilary's judicial misconduct

claim is procedurally defaulted.

In his seventh through ninth claims, Mr. McGilary asserts that the admission

of Ms. Wiggins' testimony violated his due process rights, and that defense

counsel should have objected to the admission of the testimony. (ECF No. 1 at

31

PageID 47.)  He further argues that counsel's failure to subpoena specific individuals and cross-exam Ms. Wiggins amounted to ineffective assistance and prejudiced him.  (*Id*. at 58, 61-64, 66.)  Respondent argues that Mr. McGilary's claims are procedurally defaulted because he raised the claims in his post-conviction motion, which the trial court rejected after finding that Mr. McGilary failed to show good cause or actual prejudice as required by Michigan Court Rule 6.508(D)(3).  (ECF No. 8 at PageID 253, 277.)  Respondent also asserts that the defaulted claims cannot be excused.  (*Id*.)

Michigan Court Rule 6.508(D)(3) provides that a court may not grant post-conviction relief to a defendant if the motion for relief from judgment alleges grounds for relief that could have been raised on direct appeal absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

Here, the Michigan Supreme Court rejected Mr. McGilary's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. McGilary*, 996 N.W.2d 445, 445 (Mich. 2023).  The Michigan Court of Appeals denied Mr. McGilary's post-conviction appeal in a form order because he "failed to establish that the trial court erred in denying the motion for relief from judgment." (ECF No. 9-25, at PageID 1383.)  However, when providing the rationale for rejecting

32

his post-conviction appeals in the form order, the courts did not refer to subsection (D)(3) or Mr. McGilary's failure to raise his claims on direct appeal. The orders are unexplained, meaning they are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). The Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Mr. McGilary's post-conviction claims. *Id.*

In its opinion denying Mr. McGilary's post-conviction motion, the trial court cited Rule 6.508(D)(3) and its requirement that a defendant seeking post-conviction relief must show good cause and actual prejudice for failing to raise a claim on a direct appeal. *People v. McGilary*, No. 12-001815-01-FC, *2-3 (Wayne Cnty. Cir. Ct. Nov. 8, 2022); (ECF No. 9-19 at PageID 876-77). Before discussing the claims, the trial court again indicated that it could not grant post-conviction relief unless Mr. McGilary could establish good cause and actual prejudice. (ECF No. 9-19 at PageID 877.) The court later noted that Mr. McGilary could have raised the claims on direct appeal. (*Id.* at PageID 881.) The court also acknowledged that Mr. McGilary raised an ineffective assistance of appellate counsel claim to establish good cause for failing to raise the claims on his appeal of right, but the court concluded that appellate counsel was not ineffective. (*Id.* at PageID 880-81.) The language in the trial court's opinion was sufficient to invoke

the provisions of Michigan Court Rule 6.508(D)(3) to procedurally default Mr.

McGilary's claims.  *See Friday v. Pitcher*, 99 F. App'x 568, 574 (6th Cir. 2004)

(finding that the petitioner's claims were procedurally defaulted where "[t]he state

trial court held that [he] had not established good cause for failing to raise them

during his prior appeal, and both state appellate courts cited M.C.R. 6.508(D) in

denying [him] relief").

The fact that the trial court may have discussed the merits of Mr. McGilary's

claims in addition to invoking the provisions of Rule 6.508(D)(3) to reject the

claims does not alter this analysis.  *See Alvarez v. Straub*, 64 F. Supp. 2d 686, 695

(E.D. Mich. 1999).  A federal court need not reach the merits of a habeas petition

where the last state court opinion clearly and expressly rested upon procedural

default as an alternative ground, even though it also expressed views on the merits.

*McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

Thus, Mr. McGilary's seventh, eighth, and ninth claims also are

procedurally defaulted.[2]

### G.    Ineffective assistance of Appellate Counsel (Claim 11)

---

[2] Respondent argues that Mr. McGilary's claim regarding the ineffective assistance of his appellate counsel (Claim 11) is also procedurally defaulted.  However, procedural default cannot apply to the claim where the state post-conviction review was his first opportunity to raise the claim.  *See Guilmette*, 624 F.3d at 291. Nevertheless, for the reasons stated below, Mr. McGilary is not entitled to habeas relief on the claim.

In his final claim, Mr. McGilary argues ineffective assistance of counsel due to appellate counsel's failure to raise several arguments that Mr. McGilary believes caused him "massive prejudice in the shape of a prison sentence for a crime there is significant possibility that [he] is actually innocent." (ECF No. 1 at PageID 83-84.) He alleges that counsel failed to raise on appeal the following constitutional violations: the admission of Ms. Wiggins' and Officer Russell's trial testimony; the lack of testimony by Kelley Shannon; trial counsel's failure to investigate cellphone records and police dash camera footage and subpoena two officers; and overall ineffective assistance by his trial counsel. (*Id*. at PageID 75-84.)

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court explained in *Jones v. Barnes*:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. The Supreme Court has subsequently noted that "[n]otwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to

demonstrate that counsel was incompetent." *Smith v. Robbins,* 528 U.S. 259, 288 (2000).

This is because strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Mr. McGilary fails to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that Mr. McGilary raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel raised four claims in a thirty-eight-page appellate brief. (*See* ECF No. 9-22 at PageID 1109-52.) Even more, appellate counsel filed

36

a supplemental appeal brief raising two additional claims.  (*See* ECF 9-22 at

PageID 1155-74.)  Mr. McGilary raises those same claims as the first six claims in

his instant petition.

   None of the claims raised by Mr. McGilary in his post-conviction motion

were "dead-bang winners."  Most notably, Mr. McGilary did not present new

reliable evidence to support any assertion of innocence which would allow this

Court to consider his defaulted claims as a ground for relief despite the procedural

default.  As discussed, his sufficiency of evidence claim is insufficient to invoke

the actual innocence doctrine to the procedural default rule.  *See Malcum v. Burt*,

276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

   His claim of ineffective assistance of trial counsel also fails.  For example,

although Mr. McGilary claims that his trial counsel was ineffective for failing to

present an alibi defense through Ms. Shannon, he is unable to use this purported

alibi witness to support his claim of actual innocence because he has not offered

an affidavit from Ms. Shannon establishing what her proposed testimony would be

and whether she would be willing to testify on his behalf.  *See, e.g.*, *Townsend v.*

*Lafler*, 99 F. App'x 606, 610 (6th Cir. 2004).

   Mr. McGilary has not shown that appellate counsel's strategy in presenting

these claims and not raising other claims was deficient or unreasonable.  In effect,

the Court rejects Mr. McGilary's argument involving appellate counsel's handling

of his appeal of right before the Michigan Court of Appeals. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (internal quotation marks and citation omitted) ("Appellate counsel cannot be found to be ineffective for failure to raise an issue that lacks merit.").   Furthermore, because Mr. McGilary cannot meet his burden with respect to his ineffective assistance of appellate counsel claim, it therefore cannot excuse the procedural default for not raising his other claims on direct review. *See McMeans v. Brigano*, 228 F. 3d 674, 682-83 (6th Cir. 2000).

Mr. McGilary first argues that appellate counsel was ineffective for failing to challenge the admission of Ms. Wiggins' and Officer Russell's testimony. Appellate counsel, however, did raise this claim in the appeal brief.  Counsel also argued that trial counsel was ineffective for inviting Officer Russell's testimony. (ECF No. 9-22, PageID 1110, 1127-36).  Because appellate counsel raised this claim on Mr. McGilary's appeal of right, this portion of his claim is without merit.

With respect to appellate counsel's failure to raise certain ineffective assistance of appellate counsel claims, as mentioned above, appellate counsel raised a claim that trial counsel was ineffective for inviting Officer Russell's prejudicial testimony.  Appellate counsel in a supplemental brief also raised a claim that trial counsel was ineffective for failing to request fingerprint, gunshot residue, or ballistics testing, or request funds for independent forensic testing. (ECF No. 9-22, PageID 1156, 1162-68).

38

Mr. McGilary also argues that appellate counsel should have raised a claim that trial counsel was ineffective for failing to call Kelley Shannon as a defense witness and for failing to investigate cellphone records and police dash camera footage and subpoena two police officers. This argument does not entitle Mr. McGilary to relief because, as discussed above, he has not provided affidavits from Ms. Shannon or the officers detailing what their testimony would have been or their willingness to testify on his behalf

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Mr. McGilary has offered no evidence beyond his own assertions as to whether Ms. Shannon or these two police officers would have been able to testify and what the content of their testimony would have been. In the absence of such proof, Mr. McGilary is unable to establish that he was prejudiced by trial counsel's failure to call any of these individuals to testify at trial, to support the second prong of an ineffective assistance of trial counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Mr. McGilary also claims that trial counsel was ineffective for failing to investigate cellular phone records and a police dash camera video which he claims would have provided favorable evidence.

39

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d at 771. Mr. McGilary is not entitled to relief on his ineffective assistance of trial counsel claim because he presented no evidence to either the Michigan courts or this Court that these cellular phone records would be exculpatory. *See, e.g., Daniel v. Palmer*, 719 F. Supp. 2d 817, 829 (E.D. Mich. 2010), *rev'd sub nom. on other grds Daniel v. Curtin*, 499 F. App'x. 400 (6th Cir. 2012). To prevail on his claim that counsel was ineffective for failing to obtain or use the police dash camera video, Mr. McGilary would be required to show that he was prejudiced by trial counsel's failure to exploit or use the dashboard camera video—that is, that a different outcome would have resulted from counsel focusing on the issue. *See, e.g., Bryan v. Bobby*, 114 F. Supp. 3d 467, 524 (N.D. Ohio 2015), *aff'd in part, rev'd in part on other grds and remanded*, 843 F.3d 1099 (6th Cir. 2016); *cert. den. Sub nom Bryan v. Jenkins*, 138 S. Ct. 179 (2017). Mr. McGilary has made no showing here, as he has presented no evidence to show that the police dash camera video would have exculpated him of the crime.

In summary, Mr. McGilary fails to show that trial counsel was ineffective for failing to call Ms. Shannon or two police officers as trial witnesses or to subpoena the cell phone records or the dash camera video. Accordingly, appellate counsel was not ineffective in failing to raise these claims on Mr. McGilary's

appeal of right.  *See, e.g., Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir.

2008).  Accordingly, Mr. McGilary is not entitled to habeas relief on this claim.

## IV.   Certificate of Appealability

For the reasons set forth above, the Court concludes that Mr. McGilary is not

entitled to habeas relief.  Before he can appeal this decision, Mr. McGilary must

obtain a certificate of appealability ("COA") from this Court.   To obtain a COA, a

prisoner must make a substantial showing of the denial of a constitutional right.  28

U.S.C. § 2253(c)(2).

An applicant demonstrates this denial by showing that reasonable jurists

could debate whether, or agree that, the petition should have been resolved in a

different manner, or that the issues presented were adequate to deserve

encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84

(2000).  When a district court rejects a habeas petitioner's constitutional claims on

the merits, the petitioner must demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong.  *Id*. at

484.  When a district court denies a habeas petition on procedural grounds without

reaching the prisoner's underlying constitutional claims, an appeal may be taken

only if the petitioner shows that jurists of reason would find it debatable whether

the petitioner states a valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*. In *Slack*, the Supreme Court advised:

> Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted.

*Id.*

The Court denies Mr. McGilary's a COA because he fails to make a substantial showing of the denial of a federal constitutional right. However, although reasonable jurists would not debate the Court's resolution of Mr. McGilary's claims, the issues are not frivolous. Therefore, an appeal could be taken in good faith and Mr. McGilary may proceed in forma pauperis on appeal. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

Accordingly,

**IT IS ORDERED** that Mr. McGilary's petition for the writ of habeas corpus (ECF No. 1) is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Mr. McGilary may proceed in forma

pauperis on appeal if he chooses to appeal this decision.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 2, 2025

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 2, 2025, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager